## COCHRAN *v.* HURTH.

(Decided June 29, 1927.)

*Mr. A. R. Johnson,* for plaintiff in error.
*Mr. William J. Meyer,* for defendant in error.

MAUCK, J. The plaintiff, H. A. Cochran, filed his petition in the common pleas, setting up two causes

of action against the defendant, Adolph Hurth. A demurrer was sustained to the second cause of action, and judgment was entered upon the demurrer. The plaintiff now seeks reversal of that judgment, and the only question before us is whether or not the second cause of action in the plaintiff's petition sets forth facts sufficient to constitute a cause of action.

The plaintiff alleged that he entered into a contract with the defendant whereby "plaintiff was to take with him to Portsmouth any assistants necessary and direct and assist in disposing of $77,000 worth of common stock in the Hurth Hotel Company, or so much as was necessary to make a total of $150,000 worth of stock in said company, including what had been disposed of, and in consideration of said services plaintiff was to receive the sum of $550."

The other averments relate to the times of payment, and the petition further avers a breach of the contract mentioned. The question, then, is whether or not the facts thus pleaded show an enforceable contract.

The view that there was no valid engagement arising by virtue of the facts pleaded is based on the contention that the provisions of the Blue Sky Law made it impossible for the plaintiff to fulfill the obligations undertaken by him, for the reason that he does not show that he was licensed by the commissioner of securities of this state as a dealer in securities. Plaintiff in error now claims that this view is unsound under the views expressed by the Supreme Court in *Warren People's Market Co.* v. *Corbett & Sons,* 114 Ohio St., 126, 151 N. E., 51. We do not

find the opinion in this case decisive of the question arising in the instant case. It does, however, throw strong light on the legal relations arising from the sale of a stock issue. In that case it is held that the Blue Sky Law penalizes a sale of stock by the issuer, when such issuer fails to file with the commissioner of securities the written statement required by paragraph (f) of Section 6373-2, General Code, showing the particular issue to be exempt from the general provisions of the act. It then holds that, while such sale subjects the issuer to a penalty, the omission to file the statement with the commissioner of securities is a mere technical default, and affects no substantial rights of the purchaser, and does not invalidate a contract made for the purchase of the stock.

It is possible, therefore, under this holding, that in the instant case the issuing corporation might have been proposing to sell with the plaintiff's aid a block of stock which was exempt for some reason from certification by the commissioner, and that the issuing corporation might have made with purchasers a valid contract for the sale and delivery of such stock. Notwithstanding all this, it does not follow that the plaintiff could have made a contract with the issuer, or with any other person, to act as a dealer for such stock, if in so acting he was bound to violate a criminal law. The purpose of the Blue Sky Law is to protect the purchasers of securities, and, to effect this, certain obligations are imposed upon those who are issuing the securities, and agents employed by them are required to be licensed as dealers. An analogous situation is found in the requirements of the several states that insurance

companies and their soliciting agents must be licensed to do business. It is well settled that, while such laws penalize the issuance of a policy by an unlicensed company, or its sale and delivery by an unlicensed agent, the contract of insurance sought to be effected between the insurer and insured is nevertheless enforceable. 32 Corpus Juris, 998, 1001; *Union Mutual Life Ins. Co.* v. *McMillen,* 24 Ohio St., 67; *Manhattan Ins. Co.* v. *Ellis,* 32 Ohio St., 388. We conclude, therefore, that nothing in the *Market Company case* tends to establish the right of an unlicensed dealer to enforce a contract that contemplates a violation of the criminal statutes.

While the contract sued upon might contemplate such a violation of the law as to render the same invalid, no presumption to that end can be indulged. It is a primary rule that, as between two possible constructions, one rendering an agreement enforceable and the other rendering it unenforceable, that interpretation will be given to it which makes it enforceable. 4 Page on Contracts (2d Ed.), Section 2050. If it is possible, therefore, that the services contemplated by the contract sued upon might have been performed in such a way as to involve no violation of the law, such presumption will be followed. That the facts pleaded in the second cause of action are in possible harmony with the Blue Sky Law seems clear.

■ It does not appear that the plaintiff has not fully complied with the terms of the Blue Sky Law, if he were in fact binding himself to do such things as required him to become a licensed dealer.

■ It is possible that, if the plaintiff was to sell

any stock, such sale was to be made outside the state of Ohio.

■ It is -possible that plaintiff was to only assist in the preparation of literature, and to render such other preliminary services as the occasion might require, prior to the actual sale of the stock.

■ It is possible that the plaintiff was to actually sell the stock, but sell it to such persons as it might be lawfully sold to by the plaintiff, without the plaintiff becoming a dealer in securities, for under Section 6373-2, General Code, there is excepted from the definition of the term "dealer," by paragraph (d), one, not the issuer, who disposes of securities to a licensee, or to a company dealing in securities.

These and possibly other interpretations of the contract sued upon render it impossible for the court to say that the contract was necessarily invalid.

The presumption in substantive law that a contract is enforceable is carried into the law of procedure. When a presumption of the enforceability of a contract arises, such presumption need not be pleaded. Without multiplying authorities, Bliss on Code Pleading, Section 175, quotes from Chitty the terse rule that, when the law presumes a fact, such presumption should not be pleaded. Bliss adds that among other such presumptions is the capacity to contract and the legality of the business transacted. He continues:

"The plaintiff should not state the facts thus presumed; but, if it be put in issue, the contrary averment must come from the other side, although in actions for injury to character some of the old common-law precedents violate the rule by unnecessarily alleging the good character of the plaintiff."

It is true that this general rule of pleading is departed from in those cases where it is sought to recover upon a contract involving the expenditure of public funds, but that line of cases for obvious reasons has no application to suits upon private contracts.

The second cause of action, as pleaded by the plaintiff, is sufficient in law to warrant a recovery. If the contract in fact committed the plaintiff to a violation of the law in order to perform, such commitment would render the contract unenforceable. Such facts may, however, be brought into the case only by appropriate answer.

The judgment of the common pleas court is accordingly reversed, and the case remanded to that court for further proceedings according to law.

*Judgment reversed and cause remanded.*

MIDDLETON, J., concurs.
SAYRE, P. J., not participating.