George BEDROSIAN et al.,
Plaintiffs-Appellants,

v.

Joseph MINTZ, Administrator, Erie County Bar Association Aid to Indigent Prisoners Society, et al., Defendants-Appellees.

No. 989, Docket 75–7099.

United States Court of Appeals,
Second Circuit.

Argued May 14, 1975.

Decided June 20, 1975.

Herman Schwartz, Amherst, N. Y.
(Edward I. Koren, Amherst, N. Y., on
the brief), for plaintiffs-appellants.

Richard F. Griffin, Buffalo, N. Y.
(Moot, Sprague, Marcy, Landy, Fernbach
& Smythe, Buffalo, N. Y., on the brief),
for defendants-appellees Joseph D.
Mintz, Administrator, and Erie County
Bar Association Aid to Indigent Prison-
ers Society, Inc.

Ralph McMurry, Asst. Atty. Gen. of
the State of New York (Louis J. Lef-
kowitz, Atty. Gen. of the State of New
York and Samuel A. Hirshowitz, First
Asst. Atty. Gen., on the brief), for de-
fendant-appellee Carman F. Ball, Justice
of the Supreme Court of the State of
New York.

Before KAUFMAN, Chief Judge,
OAKES, Circuit Judge, and JAMESON,
District Judge.*

JAMESON, District Judge:

In this class action, under 42 U.S.C.
§ 1983, the plaintiffs-appellants are in-
dictees in criminal cases arising out of
the September, 1971 uprising at the Atti-
ca Correctional Facility and out-of-state
attorneys representing the indictees.
They seek (1) a declaratory judgment
that the attorneys "are entitled to com-
pensation to the same extent as counsel
appointed for indictees who are members
of the New York Bar", and (2) a "man-
datory injunction ordering defendants to
appoint the [attorneys] and members of
their class as counsel for the [indictees]
and members of their class, pursuant to
New York County Law § 18–b". The
defendants-appellees are the Erie County
Bar Association Aid to Indigent Prison-
ers Society, Inc., Joseph D. Mintz, its
administrator, and Carman F. Ball, a

justice of the Supreme Court of the
State of New York, who was assigned to
preside over a special and trial term for
Wyoming County in the Attica cases.
The district court granted defendants'
motion to dismiss for failure of the
plaintiffs to present a substantial federal
question.

New York County Law Article 18–B
(McKinney, Consol.Laws, c. 11, 1972;
Supp.1974–75) provides for the payment
of fees for counsel assigned to represent
indigent defendants. The assignment of
counsel is made by the court. The Coun-
ty of Erie in conjunction with the Erie
County Bar Association organized the
Erie County Bar Association Aid to Indi-
gent Prisoners Society, Inc. to assist the
court by making available attorneys who
are ready and willing to represent indi-
gent defendants. The Society assists as-
signed counsel in processing applications
to the court for services and expenses
and disburses funds to assigned counsel
upon receipt of a court order directing
payment.

Justice Ball was responsible for assign-
ing most, if not all, the attorneys to de-
fend persons indicted for crimes arising
out of the Attica prison riot. At ar-
raignment he advised each of the indict-
ees "of his right to counsel of his own
choice and that if he did not have suffi-
cient funds to hire counsel, the court
would assign counsel in accordance with
Article 18B of the County law". A num-
ber of the indictees initially retained
counsel, whom they later requested the
court to assign as their court-appointed
counsel. Some of those attorneys were
out-of-state attorneys who had not been
admitted to the New York Bar, while
others were New York attorneys who
were not residents of Erie County.

Given the extraordinary circumstances
surrounding the cases, Justice Ball
agreed to assign the New York attorneys
chosen by some of the indictees even
though the attorneys did not reside in
Erie County. He denied all requests for

* Senior District Judge of the District of Montana, sitting by designation.

the assignment of out-of-state counsel not admitted to the New York Bar. His refusal to appoint out-of-state counsel was based on the grounds that (1) the court was unfamiliar with the competence of out-of-state counsel or their understanding of New York law; (2) there were attorneys licensed to practice in New York who were ready and willing to accept assignments; and (3) "the expenses involved in transportation, living expenses, accommodations for office space, etc. [for out-of-state counsel] would be an excessive burden upon the taxpayers of New York State depleting the state funds which were intended for the legal defense of the defendants".[1]

Justice Ball did permit out-of-state counsel to appear *pro hac vice*[2] on behalf of the indictees as long as they were willing to associate with local counsel and provided the court with information concerning their professional background and experience. He made it clear, however, that out-of-state attorneys would not be appointed as assigned counsel or be compensated from state funds[3] and that the court was "ready, willing and able to supply New York admitted attorneys" to all of the defendants.

One out-of-state attorney whom Justice Ball refused to assign, commenced an Article 78 proceeding in the Appellate Division, Fourth Department, seeking to compel Justice Ball to assign and reimburse him as counsel for an Attica indictee. The Appellate Division in dismissing the action held that although there was no legal impediment to the appointment of the out-of-state counsel, the matter was one within the discretion of Justice Ball and the exercise of that discretion could not be attacked in an Article 78 mandamus proceeding. *Goodman v. Ball*, 45 A.D.2d 16, 356 N.Y.S.2d 146 (4th Dept. 1974). The State Court of Appeals denied leave to appeal.

Plaintiffs-appellants then started this class action. Following discovery plaintiffs moved for summary judgment and defendants moved for dismissal. In granting defendants' motion, the court said· in part:

"Matters within the discretion of the state trial justice, such as the choice of assigned counsel, are reviewable on appeal, not under the Civil Rights Act. *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), cited with approval in *Scheuer v. Rhodes*, 416 U.S. 232, at 244–245, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). *See also Goodman v. Ball*, 45 A.D.2d 16, 356 N.Y.S.2d 146 (1974)."

In essence two issues are raised on appeal: (1) whether the district court erred in concluding that the assignment of counsel by Justice Ball was not subject to review under 42 U.S.C. § 1983; and (2) whether the refusal of Justice Ball to assign out-of-state counsel violated appellants' constitutional rights. Appellants do not contend that a defendant has the right to counsel of his choice and "do not quarrel with the general proposition that 'the choice of an assigned counsel is for the judge, not the defendant' ". Rather, they argue that in exercising his discretion and making his "choice of assigned counsel", Justice Ball engaged in "unconstitutional discrimination".

---

1. Chapter 992 of the New York Laws of 1974 appropriated state funds to reimburse localities for the cost of trials resulting from the alleged commission of offenses by inmates at state correctional institutions. Chapter 992, however, does not change the method of assigning counsel, nor does it authorize payment to attorneys other than those assigned by the court.

2. The Rules of the New York State Court of Appeals § 520.8(d)(1) vests in state judges the discretion to permit attorneys to appear *pro hac vice*.

3. Justice Ball granted requests for investigators and authorized payment for their services and expenses pursuant to § 722–c of the County Law, which permits a court to "authorize counsel, whether or not assigned in accordance with a plan", to obtain investigative and expert services on behalf of a defendant.

## I. Reviewability of Assignment of Counsel

■ As the Supreme Court stated in *Younger v. Harris*, 401 U.S. 37, 43, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971), "Since the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts". Given this "longstanding public policy against federal court interference with state court proceedings", federal courts have refused to issue injunctions enjoining state criminal proceedings unless the party seeking the injunction has demonstrated "great and immediate" irreparable injury which could not be "eliminated by his defense against a single criminal prosecution." *Id.* at 46, 91 S.Ct. at 751; *O'Shea v. Littleton*, 414 U.S. 488, 499–502, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974).[4]

To grant the injunctive relief sought by the appellants would disrupt the state criminal proceedings in sharp conflict with the principles of equitable restraint outlined in *Younger v. Harris*.[5] This is especially true given the discretionary nature of the act which appellants seek to enjoin. The fact that the action is one brought pursuant to 42 U.S.C. § 1983 does not necessitate a different conclusion. The mere fact that 42 U.S.C. § 1983 constitutes an "expressly authorized" exception to the absolute bar against federal injunctions directed at state proceedings provided by 28 U.S.C. § 2283 in no way qualifies "the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding". *Mitchum v. Foster*, 407 U.S. 225, 243, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972); *O'Shea v. Littleton, supra*, 414 U.S. at 499, 94 S.Ct. 669.

Moreover, appellants have failed to establish that they are subject to substantial and immediate irreparable injury for which there are no adequate remedies at law. There are many competent New York attorneys who are ready and willing to represent the indictee appellants. In addition, appellants may raise any denial of equal protection and effective assistance of counsel arguments on appeal. With respect to the attorney appellants, there is likewise no substance to the ir-

---

**4.** In *O'Shea v. Littleton*, 19 residents of Cairo, Illinois brought a civil rights class action against a magistrate and a circuit court judge seeking to enjoin their allegedly unconstitutional practices with respect to bond setting, sentencing and payment of jury fees. The district court dismissed the action, holding that it had no jurisdiction to issue injunctive relief and that judicial immunity barred the relief sought. The court of appeals reversed. In turn, the Supreme Court, reversing the court of appeals, held that the injunctive relief sought would interfere with state criminal proceedings contrary to the holding in *Younger v. Harris*. The Court held further that the Respondents had failed to establish "the basic requisites of the issuance of equitable relief in these circumstances—the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law". *Id.* 414 U.S. at 502, 94 S.Ct. at 679.

**5.** At oral argument counsel suggested that the federal-state comity theory which underlies the doctrine of equitable restraint in *Younger v.*

*Harris* is not applicable since the assignment of counsel is merely a collateral matter in the prosecution of the indictee appellants. In *Stefanelli v. Minard*, 342 U.S. 117, 123, 124, 72 S.Ct. 118, 121, 96 L.Ed. 138 (1951), the Court, in refusing to enjoin the use of allegedly illegally seized evidence in a pending state criminal proceeding, said in part: "If the federal equity power must refrain from staying State prosecutions outright to try the central question of the validity of the statute on which the prosecution is based, how much more reluctant must it be to intervene piecemeal to try collateral issues. . . .

". . . Asserted unconstitutionality in the impanelling and selection of the grand and petit juries, *in the failure to appoint counsel*, in the admission of a confession . . . all would provide ready opportunities, which conscientious counsel might be bound to employ, to subject the orderly, effective prosecution of local crime in local courts."

reparable injuries claimed by them, as discussed *infra*.[6]

We recognize that different considerations apply to the declaratory relief sought than to injunctive relief, at least in a situation in which no criminal action is pending. *Steffel v. Thompson*, 415 U.S. 452, 469, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). At the same time, *Steffel v. Thompson* reaffirmed *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), that the same principles of "equity, comity and federalism" recognized in *Younger v. Harris* "ordinarily would be flouted by issuance of a federal declaratory judgment when a state proceeding was pending. . . ." 415 U.S. at 461, 94 S.Ct. at 1216. Thus *Samuels v. Mackell*, as reaffirmed by *Steffel v. Thompson*, equally precludes the granting of declaratory relief in this case.

## II. *Constitutionality of Refusal to Assign Out-of-State Counsel*

Appellants argue that the refusal of Justice Ball to assign out-of-state counsel (1) interfered with indictee appellants' right to the effective assistance of counsel; (2) denied equal protection to all appellants; (3) violated the attorney appellants' right to travel; and (4) burdened interstate commerce. All of these arguments are ultimately premised on appellants' claim that the discrimination against out-of-state attorneys was unjustified. Even assuming an adequate basis for equitable relief, we find no merit in appellants' constitutional contentions.

■ There is no doubt that a state has a substantial interest in regulating the practice of law within its borders, *Sperry v. Florida*, 373 U.S. 379, 383, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963), and may establish reasonable rules and qualifications for the practice of law within its jurisdiction. *See, e. g., Martin v. Walton*, 368 U.S. 25, 82 S.Ct. 1, 7 L.Ed.2d 5 (1961); *Konigsberg v. State Bar of California*, 366 U.S. 36, 40–41, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961); *Schware v. Board of Bar Examiners of New Mexico*, 353 U.S. 232, 239, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957); *Brown v. Supreme Court of Virginia*, 359 F.Supp. 549 (E.D.Va.), aff'd, 414 U.S. 1034, 94 S.Ct. 533, 38 L.Ed.2d 327 (1973).

In *Martin v. Walton, supra*, the Court upheld the validity of rules promulgated by the Supreme Court of Kansas which "provide in substance that an attorney admitted to the Bar of Kansas who has been admitted to the Bar of another state and who is regularly engaged in the practice of law in that state shall associate local counsel before he can appear in courts or before boards or commissions of Kansas". *Martin v. Davis*, 187 Kan. 473, 357 P.2d 782, 785 (1960). The Supreme Court of Kansas justified the rules on the ground that they assured that litigants would be represented by counsel who was "familiar with local rules, procedure and practice and upon whom service may be had in all matters connected with actions or proceedings proper to be served upon an attorney of record". *Id.* at 791. The United States Supreme Court in dismissing the appeal held that these reasons given by the Kansas Supreme Court could not be disregarded and "the fact that the Rules may result in 'incidental individual inequality' [does not] make them offensive to the Fourteenth Amendment". 368 U.S. at 26, 82 S.Ct. at 2.[7]

---

**6.** As indicated, *supra*, the district court in dismissing the action, relied on *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) and *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Both of those cases consider the doctrine of judicial immunity. As we find appellants' action

barred by *Younger v. Harris*, we do not reach the issue of whether judicial immunity is a bar to suits seeking equitable relief.

**7.** In *Brown v. Supreme Court of Virginia, supra*, at 554, a three-judge court, relying heavily on *Martin v. Walton*, held that the Supreme

The classification upheld in *Martin v. Walton* distinguished between members of the same state bar. Clearly, if that classification is valid, the classification employed by Justice Ball distinguishing out-of-state attorneys not members of the New York Bar from members of the New York Bar must be sustained. While Justice Ball had power to assign these out-of-state counsel to represent the indigent Attica defendants, he was under no obligation to do so. The assignment of counsel was a matter within his sole discretion. See *United States v. Tortora,* 464 F.2d 1202, 1210 (2 Cir.), *cert. denied,* 409 U.S. 1063, 93 S.Ct. 554, 34 L.Ed.2d 516 (1972).

Justice Ball's refusal to appoint out-of-state attorneys was founded on a rational basis [8] and did not constitute an abuse of discretion. The State of New York has a legitimate interest in developing a pool of competent attorneys to represent indigents who appear before its courts. To appoint out-of-state counsel when there are qualified in-state counsel ready and willing to represent indigents can only serve to hamper this state objective. Equally important is the state interest in providing indigents with counsel who are familiar with the laws of the state and the rules and practices of the New York courts.[9]

Attorney appellants argue that their competence was determined by Justice Ball who, after reviewing their detailed affidavits as to their competence and experience, permitted them to appear *pro hac vice* on behalf of the indictee appellants. The affidavits, however, indicate only that the attorneys have had extensive experience in the trial of criminal cases, and do not establish any thorough knowledge of New York law or procedure. While experience in criminal law in other jurisdictions may qualify an attorney to appear *pro hac vice* in a jurisdiction wherein he has never practiced, especially when as here he is required to associate with local counsel familiar with state law and procedure, it does not follow that the court may be compelled to appoint that attorney to serve as assigned counsel. There is a rational basis for distinguishing between permitting non-licensed retained counsel chosen by the defendant to appear *pro hac vice* and assigning nonlicensed counsel for whom the court assumes the responsibility of appointment.

*Spanos v. Skouras Theatres Corp.,* 364 F.2d 161 (2 Cir.), *cert. denied,* 385 U.S. 987, 87 S.Ct. 597, 17 L.Ed.2d 448 (1966), cited by appellants throughout their brief, is inapposite. In *Spanos,* this court held "that under the privileges and immunities clause of the Constitution no state can prohibit a citizen with a federal claim or defense from engaging an out-of-state lawyer to collaborate with

---

Court of Virginia had "the constitutional right to separately classify applicants taking the bar examination and those foreign attorneys who seek admission by comity or reciprocity". Rejecting the contention that the classification was in violation of the Equal Protection Clause, the court noted that the " 'test is whether the difference in treatment is an invidious discrimination' ". *Id.* (Quoting from *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed. 351 (1973)).

8. Appellants argue that Justice Ball's refusal to assign out-of-state counsel can only be justified by a showing of a compelling state interest because it infringes on appellants' fundamental rights, i. e., the indictee-appellants' right to effective assistance of counsel and the attorney-appellants' right to travel. *Dunn v. Blumstein,* 405 U.S. 330, 335, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). As discussed *infra,* appel-

lants have not been deprived of their right to travel or denied the effective assistance of counsel as a result of Justice Ball's action. The rational basis test is therefore the standard for review. *McGowan v. Maryland,* 366 U.S. 420, 425, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).

9. In addition, as noted by Justice Ball, assignment of out-of-state counsel may impose an excessive economic burden on New York taxpayers. The fact that in some particular instances travel expenses for an out-of-state attorney might prove to be less than travel expenses for a New York attorney does not preclude a court from relying on economic considerations as justification for its refusal to assign out-of-state counsel. "Incidental individual inequality" is not sufficient to establish a violation of the Fourteenth Amendment. *Martin v. Walton, supra,* 368 U.S. at 26, 82 S.Ct. 1.

an in-state lawyer and give legal advice concerning it within the state".[10]  *Id.,* 364 F.2d at 170.  We expressly limited our holding to the situation there presented—a licensed out-of-state lawyer working with a local lawyer "on a federal claim or defense".  The court was not concerned, as here, with an alleged equal protection violation in state court proceedings which does not involve a claim or defense based upon federal law.

We conclude that the classification employed by Justice Ball was rational and reasonable, does not involve "invidious discrimination", and does not violate the appellants' equal protection rights under the Constitution.

■  Nor do we find merit in attorney appellants' contention that Justice Ball's refusal to assign them as counsel infringed their right to travel under the privileges and immunities clause.  They are not prevented from coming to New York or residing in New York.  Procedures for licensing persons to practice professions within a state are not inconsistent with their right to travel freely within the state.  We are not concerned with a residency requirement, but rather with the right of non-residents to practice law in New York state courts.[11]  They have no constitutional right to do so unless they are admitted to the New York Bar.  The power of the state to regulate the , practice of law in state courts is beyond dispute.  *Martin v. Walton, supra.*  While Justice Ball could have assigned attorney appellants as counsel for the indictee appellants, his refusal to do so was a proper exercise of judicial discretion.  This court cannot

10.·  The court noted that Spanos "had concentrated on antitrust problems in the motion picture industry—a subject requiring detailed knowledge both of the decisions and of complex business practices; it was this knowledge and skill  .  .  .  that the defendants wished to bring to the aid of their New York attorneys in preparing the antitrust suit".  364 F.2d at 170.

11.  Appellants' reliance on *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *Dunn v. Blumstein, supra,* and

compel the exercise of that discretion in a particular way.

Affirmed.

other residency cases is misplaced.  Attorney appellants have not been precluded from residing in New York.  Nor was it Justice Ball's purpose in refusing to assign attorney appellants to discourage them from residing in New York.  Rather, legitimate state interests outlined *supra* serve as the basis for the refusal to assign attorney appellants.  *See Brown v. Supreme Court of Virginia, supra; Huffman v. Supreme Court of Montana,* 372 F.Supp. 1175, 1181–1183 (D.Mont.), *aff'd,* 419 U.S. 955, 95 S.Ct. 216 (1974).