Carol KOSCOVE, Plaintiff–Appellee,

v.

Richard BOLTE, Defendant–Appellant.

No. 98CA1099.

Colorado Court of Appeals,
Div. A.

Feb. 15, 2001.

Certiorari Granted Aug. 20, 2001.*

* Justice KOURLIS would also grant as to the following issue: Whether a Colorado state court has jurisdiction to hear a claim of unauthorized practice of law, when the alleged conduct took place solely within the federal courts, but under state law claims.

Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder, CO; Robert T. Dunlap, Colorado Springs, CO, for Plaintiff–Appellee.

Branden Frindt & Stinar LLC, Ronald Frindt, Colorado Springs, CO, for Defendant–Appellant.

Opinion by Judge NIETO.

Defendant, Richard Bolte, appeals the judgment entered against him and in favor of the plaintiff, Carol Koscove, after a trial to the court. The judgment was based on attorney fees paid to Bolte by Koscove pursuant to an unenforceable agreement. We affirm the judgment.

Bolte is an attorney licensed in Wisconsin but not in Colorado, a fact that Koscove was aware of at all times pertinent to this case. At the time Bolte first contacted Koscove, he was not actively engaged in the practice of law in Wisconsin or elsewhere. All contacts between Bolte and Koscove and all work Bolte performed took place in Colorado. Bolte lived in Colorado during the time he was involved with this case.

In November 1994, Koscove entered into an agreement with Bolte whereby Bolte was to investigate and pursue Koscove's claims of royalty payments due her under a mineral royalty lease with an oil company. Bolte's compensation for his services under the agreement was based on a percentage share of the royalties recovered.

Without associating with a Colorado attorney, Bolte began working on Koscove's behalf, and he reported directly to her. Bolte investigated Koscove's claim and determined that royalties had been underpaid. In April 1995, Koscove retained a Colorado attorney, who is not a party to this action, to assist her in the contemplated action against the oil company. The Colorado attorney did not supervise Bolte's work, which continued after the Colorado attorney was retained. However, before Koscove could file her suit against the oil company, the company sued her in the federal district court.

The Colorado attorney answered and counterclaimed for the royalties due. In his engagement letter, the Colorado attorney referred to Bolte as Koscove's "local counsel," and he listed Bolte in the pleadings as "of counsel." In January 1996, Bolte was admitted *pro hac vice* in the federal court.

Bolte did substantial work on the case, and through his and the Colorado attorney's efforts, a substantial amount was recovered for unpaid royalties. Pursuant to their agreement, Koscove paid Bolte his percentage share of the money recovered.

Thereafter, Koscove brought this action against Bolte to recover the fees paid to him, claiming that they were attorney fees and that he was not entitled to the fees because he was not licensed to practice law in Colorado. She also claimed that Bolte had failed to comply with rules governing attorney contingent fee agreements contained in Chapter 23.3 of Colorado Rules of Civil Procedure. The trial court agreed with Koscove and entered judgment in her favor for all the fees paid to Bolte. This appeal followed.

## I.

Bolte does not dispute that he and Koscove entered into an agreement for services, but Bolte asserts that the agreement was not a contract for legal services. We are not persuaded.

The primary goal of contract interpretation is to determine and give effect to the intent of the parties. The interpretation of a contract is a question of law. Therefore, our review is *de novo*. *Ad Two, Inc. v. City & County of Denver*, 9 P.3d 373 (Colo.2000).

A review of the written agreement and the evidence of the conduct of the parties before and after its execution leads us to conclude, as did the trial court, that it was a contract for legal services.

The record reveals the following facts. Bolte was an attorney but not licensed in Colorado. It was his expertise as a lawyer that led Koscove to enter into the agreement for services; Bolte had no expertise in the business of extracting oil and gas, or in oil and gas litigation.

The parties' intention that Bolte was to provide legal services is further made clear by the first agreement proposed by Bolte but rejected by Koscove. In that proposal, Bolte suggested that he be given an ownership interest in the property "so that Bolte, as a part owner, can provide advice and do work that may have legal ramifications without violating law or ethics." Bolte testified that he suggested this arrangement so "that I could go into court and represent or protect my interest, whatever it was, my token interest. That's not granting—representing anyone else, just representing mine."

When the Colorado attorney entered the case, and even after Bolte was admitted *pro hac vice* in the federal district court, Bolte continued to operate under the same agreement. The Colorado attorney testified that he considered Bolte to be Koscove's lawyer from the beginning.

The agreement does not make specific reference to legal services, but it is replete with phrases that suggest that was its purpose. Bolte was required to "investigate, examine, copy, analyze and interpret" documents relating to the mineral lease. He was to "pursue" the payments due Koscove. Bolte's fees were based on a percentage share of royalties that were increased or enhanced, a provision almost indistinguishable from an attorney's contingent fee arrangement. Fees for future royalties were to commence "after payment, settlement, or judgment for past and present sums due." The agreement remained in force until "a settlement is reached or litigation is completed."

When the agreement is read against the background of Bolte's status as a lawyer and his lack of expertise in the business of extracting oil and gas, the fee agreement negotiations between the parties, the contemplation of litigation, and the work performed by Bolte, the trial court's determination that the agreement is a contract for legal services is fully supported by the record. Based on our review, we agree with the trial court's determination.

## II.

Bolte also asserts that his performance under the agreement did not constitute the practice of law in Colorado. We disagree.

While acknowledging the difficulty of giving an all-inclusive definition of the practice of law, the supreme court has defined it as follows:

> We believe that generally one who acts in a representative capacity in protecting, enforcing, or defending the legal rights and duties of another and in counseling, advising and assisting him in connection with these rights and duties is engaged in the practice of law.

*Denver Bar Ass'n v. Public Utilities Commission*, 154 Colo. 273, 279, 391 P.2d 467, 471 (1964). *See also* C.R.C.P. 201.3(2).

The trial court found that Bolte had engaged in the practice of law in this matter. If the record supports the trial court's findings of fact, they will not be disturbed on review. *Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979).

Review of the record reveals that Bolte analyzed Koscove's lease with the oil company and gave her his opinion of its

meaning. He also expressed opinions about legal theories for recovery of damages and discouraged pursuit of at least one theory. He represented Koscove's interests during his communications with the oil company. He drafted a demand letter to the oil company in which he stated that the letter was a "single last effort to resolve issues short of litigation." After Koscove retained a Colorado lawyer to respond to the suit filed by the oil company, and before Bolte was admitted *pro hac vice* in the federal district court, Bolte drafted several versions of Koscove's counterclaims and other pleadings, which he sent to the Colorado lawyer. He also sent memorandums to the Colorado lawyer on a variety of legal topics. When the Colorado attorney filed Koscove's response in the federal court litigation, he listed Bolte "of counsel."

Thus, there is substantial evidence in the record to support the trial court's finding that Bolte engaged in the practice of law. Accordingly, that finding will not be disturbed on review.

Bolte also contends that the work he did prior to his *pro hac vice* admission in the federal court could lawfully be done by a nonlawyer. Specifically, he argues that the fact investigation he did before the entry of the Colorado lawyer and the documents he prepared for the Colorado lawyer were all permitted activities. While we agree that, in some circumstances, fact investigation and legal drafting could be lawful activities by a nonlawyer, those same functions are appropriate and typical activities for a lawyer. Taken in the full context of Bolte's relationship with Koscove, the trial court concluded that his actions constituted the practice of law. As stated above, this conclusion is supported by the record.

The trial court found that the agreement "in part" required the performance of legal services and what Bolte did was "in part" legal service to Koscove. Bolte might have been able to establish that some of his actions were nonlawyer activities and thus have made a case for compensation for those particular activities. However, he made no attempt in the trial court to separate his ac-

tions into lawyer and nonlawyer activities, and we will not consider the issue now.

### III.

Bolte next contends that, if his actions did constitute the practice of law, Colorado has no jurisdiction over that practice because he was subsequently admitted *pro hac vice* in the federal district court where the litigation took place. Again, we do not agree.

Bolte argues that only the federal courts have authority to regulate the practice of law in matters before them. He primarily relies on *Spanos v. Skouras Theatres Corp.*, 364 F.2d 161 (2d Cir.1966). There, a California lawyer was retained by a New York corporation to work with New York lawyers on a federal antitrust action that the corporation contemplated filing in the federal district court in New York. The lawyer participated in the litigation that was filed in federal district court, but he was never admitted to practice law in New York. When the corporation refused to pay his fee, the lawyer brought suit. The corporation claimed he was not entitled to attorney fees because he was not admitted to practice law in New York. The court held that state law cannot prohibit a citizen from engaging an out-of-state lawyer to work in association with a local lawyer on a federal claim.

However, the facts here do not bring this case within the holding of *Spanos*. The case here is different in the following respects. Bolte entered into an agreement to provide legal services to Koscove, a Colorado citizen, on Colorado state law claims. He investigated the claims, advised Koscove, and made settlement demands on the oil company, all before the entry of a Colorado lawyer into the case. Further, at the time Bolte began his representation, there was no federal case. The case could have been filed in Colorado courts. If an action on Koscove's behalf had been filed in the federal courts, it would have been a diversity action, rather than one based on a federal claim. Bolte himself testified that "I had no idea what court it would be, whether it would be Colorado state, federal, could have been Texas from what I was seeing." Under these circumstances, we do not consider *Spanos* to be controlling.

Bolte also relies on *Cowen v. Calabrese*, 230 Cal.App.2d 870, 41 Cal.Rptr. 441 (1964), but this case is also distinguishable. In *Cowen*, the attorney was retained to work on a bankruptcy matter that was pending before the federal courts. Thus, the lawyer's engagement was exclusively for work on a federal claim in a federal court. Here, Koscove's claim was based on a Colorado state law claim, and when Bolte was retained, no litigation was pending, and no decision had been made as to where any potential litigation would be filed.

■ These circumstances, which distinguish this case from the authorities relied upon by Bolte, also lead us to conclude that the trial court had jurisdiction to adjudicate the enforceability of the agreement. Bolte provided legal services to Koscove on Colorado state law claims before any decision was made to file a case in federal court and long before he was admitted *pro hac vice* in the federal court. He continued to operate under the same agreement after his *pro hac vice* admission. We do not suggest that the federal court does not have jurisdiction to decide whether, under federal law, Bolte is entitled to fees for his work before that court. But that fact, if true, does not deprive Colorado courts of jurisdiction over the agreement that the parties entered into long before the jurisdiction of the federal court was invoked.

Since Bolte was not licensed to practice law in Colorado, § 12–5–115, C.R.S.2000, governs Koscove's claim to recover attorney fees she paid to him. Section 12–5–115 provides:

> If any unlicensed person receives any money ... as a fee or compensation for services rendered ... by him as an attorney or counselor-at-law within this state, all money so received by him shall be considered as money received to the use of the person paying the same and may be recovered, with costs of suit, by an action for money had and received.

The trial court found that Bolte had entered into an agreement to provide legal services and had in fact provided legal services; we have affirmed those findings. Thus, the trial court correctly applied § 12–5–115 and awarded Koscove judgment against Bolte for all the fees paid.

### IV.

Bolte also contends that the trial court erred by failing to dismiss Koscove's complaint. We disagree.

Koscove testified in her deposition that certain documents supported her allegation that Bolte had engaged in the practice of law. Later, she changed her answer to "I have no position on it." In her testimony on cross-examination during trial, Koscove said that it had "always been my interpretation" that the documents were evidence of the practice of law.

Bolte first argues that the complaint should have been dismissed at the end of Koscove's case because her shifting position resulted in a failure of the evidence to support her claim that Bolte had practiced law. The trial court denied the motion, finding that other evidence supported the claim.

■ In deciding a motion to dismiss or a motion for directed verdict made at the close of a party's case, the trial court must view the evidence in the light most favorable to the non-moving party. The court must also give the non-moving party the benefit of all reasonable inferences that can be drawn from the evidence. *Herrera v. Gene's Towing*, 827 P.2d 619 (Colo.App.1992). When viewed from this perspective, the record supports the trial court's denial of the motion.

Bolte also argues that Koscove's changing position was a manipulation of the discovery process, and therefore, the trial court should have dismissed the complaint as a sanction.

■ Sanctions relating to discovery are committed to the discretion of the trial court and will not be disturbed absent an abuse of discretion. *J.P. v. District Court*, 873 P.2d 745 (Colo.1994). A sanction should be commensurate with the seriousness of the violation. Litigation-ending sanctions should be used only in extreme circumstances. *Nagy v. District Court*, 762 P.2d 158 (Colo.1988).

■ The record shows that the documents referred to above were disclosed and

made available to Bolte during discovery. He was permitted to cross-examine Koscove on her statements concerning the documents. The changes Koscove made to the deposition were permitted by C.R.C.P. 30(e). Under these circumstances, we perceive no abuse of discretion.

Our resolution of this issue makes it unnecessary for us to address the application of the rules governing contingent fees in Chapter 23.3 of Colorado Rules of Civil Procedure. Nor is it necessary to address Koscove's contention that the appeal should be dismissed because of Bolte's failure to comply with post-judgment discovery requests under C.R.C.P. 69.

Judgment affirmed.

Judge CASEBOLT and Judge DAILEY concur.