In the Matter of Disciplinary Proceedings Against
Richard Bolte, Attorney at Law:

Office of Lawyer Regulation,
Complainant-Respondent,

v.

Richard Bolte, Respondent-Appellant.

Supreme Court

*No. 2003AP1184–D. Oral argument February 8, 2005.
—Decided July 19, 2005.*

2005 WI 132

(Also reported in 699 N.W.2d 914.)

For the respondent-appellant there were briefs by *Franklyn M. Gimbel, Kathryn A. Keppel* and *Gimbel, Reilly, Guerin & Brown,* Milwaukee, and oral argument by *Franklyn M. Gimbel.*

For the complainant-respondent there was a brief by *Paul W. Schwarzenbart* and *Lee, Kilkelly, Paulson & Younger, S.C.,* Madison, and oral argument by *Paul W. Schwarzenbart.*

¶ 1. PER CURIAM. Attorney Richard Bolte appeals from a referee's report and recommendation issued May 26, 2004, concluding that Attorney Bolte engaged in the unauthorized practice of law in violation of SCR 20:5.5(a)[1] and transferred real estate with the intent to hinder, delay or defraud the rights of a judgment creditor in violation of SCR 20:8.4(c).[2] The referee recommended the court suspend Attorney Bolte's license to practice law for a period of three months. We adopt the referee's findings of fact and

---

[1] SCR 20:5.5(a) provides: Unauthorized practice of law. "A lawyer shall not: (a) practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction."

[2] SCR 20:8.4(c) provides: Misconduct. "It is professional misconduct for a lawyer to: (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

conclusions of law, but conclude that a public reprimand is sufficient discipline for Attorney Bolte's misconduct in this matter.

¶ 2. Bolte was admitted to practice law in Wisconsin in 1961. His license to practice law in Wisconsin has remained in good standing and he has not been the subject of any prior discipline. Since 1989, he has elected to be on "inactive" status in Wisconsin, which means that he is not engaged in the active practice of law in Wisconsin. *See* SCR 10.03(3) (Membership).

¶ 3. The events giving rise to this proceeding occurred in Colorado, where Bolte was then residing. Bolte was not licensed to practice law in Colorado.

¶ 4. In 1994, a Colorado resident named Carol Koscove (Koscove) learned that Bolte was a lawyer and asked him for professional assistance with a potential dispute involving royalty payments due pursuant to the terms of an existing mineral lease on her property. Simply put, the lease gave Atlantic Richfield Company (ARCO) rights to extract, inter alia, carbon dioxide from her property. Koscove suspected she was not receiving proper compensation under the terms of the lease. She had approached several other individuals seeking help with this matter.

¶ 5. Bolte advised Koscove that while he was a lawyer, he was not licensed to practice in Colorado. He explained that he could not appear in court and that she would have to hire a lawyer to pursue any legal redress. The referee stated: "[i]t is clear from the evidence that it was Koscove who pursued Bolte's services and that Bolte was initially reluctant to become involved."

¶ 6. However, Bolte eventually agreed to look into the matter and the parties negotiated an agreement, executed on November 22, 1994, that provided Bolte would "investigate, examine, copy, analyze and inter-

pret" documents pertaining to the ARCO lease and the royalty payments to which Koscove claimed she was entitled. The parties agreed that Bolte would be paid $5000 per month and he was provided with a computer and a car. Under the terms of the agreement Bolte was also to receive a percentage of monies recovered by Koscove from ARCO if Koscove's suspicions proved correct and she prevailed on any ensuing claim.

¶ 7. Bolte investigated the lease dispute. Upon completion of his investigation, he advised Koscove that he believed ARCO had indeed underpaid her and that she should hire a lawyer to pursue her claims. Koscove and Bolte met with Attorney George Mueller, an attorney experienced in oil and gas leases, on January 30, 1995. After negotiating the terms of a retainer agreement, Koscove formally retained Attorney Mueller on or about April 7, 1995. Throughout this time, Bolte continued to perform work under the agreement and collaborated with Mueller preparing the case for litigation.

¶ 8. In July 1995, ARCO filed a declaratory judgment action against Koscove and others regarding various oil and mineral leases in federal district court in Colorado. Attorney Mueller filed a counterclaim on Koscove's behalf, identifying Bolte on the pleading as "of counsel."

¶ 9. On November 7, 1995, Bolte executed an affidavit in support of a motion for pro hac vice status in the Koscove/ARCO matter.[3] On January 5, 1996, the

---

[3] This affidavit and Bolte's application for pro hac vice admission was the subject of one of the three disciplinary counts filed against Bolte. The Office of Lawyer Regulation (OLR) maintained that Bolte was less than forthright about his inactive status in Wisconsin when seeking pro hac vice admis-

court entered an order permitting Bolte to appear pro hac vice in the Koscove/ARCO matter.

¶ 10. In March 1996, ARCO sent Koscove a check for $1,883,816.13 in partial settlement of Koscove's claims. On April 17, 1996, Koscove paid Bolte $388,013.23 in accordance with the terms of the agreement.

¶ 11. Koscove then retained another attorney through whom she advised Bolte that, unless he accepted the $388,013.23 as full and final payment under the agreement, she would file a lawsuit alleging he had engaged in the unauthorized practice of law. Bolte refused, maintaining that the terms of the agreement entitled him to a percentage of any additional recovery from ARCO.

¶ 12. On September 18, 1996, Koscove filed a civil lawsuit against Bolte in El Paso County District Court, *Koscove v. Bolte,* No. 96 CV 2233, alleging that the agreement between the parties was unenforceable because Bolte's services to her constituted the unauthorized practice of law under a relevant state statute. Specifically, she sought a judgment pursuant to Colorado statute § 12–5–115, which provided that "[i]f any unlicensed person receives any money . . . as a fee or compensation for services rendered . . . by him as an attorney or counselor-at-law within this state, all money so received by him shall be considered as money received to the use of the person paying the same and may be recovered with costs of suit by an action for money had and received." The matter proceeded to trial.

sion. The referee disagreed and recommended the court dismiss this charge. The OLR did not appeal that recommendation so the issue of Bolte's pro hac vice admission is not before the court.

¶ 13. On April 6, 1998, the El Paso County District Court concluded that Bolte had indeed violated the state statute, and entered judgment against Bolte in the amount of $388,013.23, plus interest and costs. On April 13, 1998, after these findings were entered but prior to the issuance of a writ of execution, Bolte transferred the title to certain real property he owned in Divide, Colorado, by recording a quit claim deed to Bredescel Financial, Inc., a Nevada corporation (Bredescel), as the grantee. The deed was transferred without consideration, and without advance notice to Bredescel, which was owned by an acquaintance of Bolte.

¶ 14. Meanwhile, Bolte appealed the civil judgment and the Colorado Court of Appeals affirmed. *Koscove v. Bolte,* 30 P.3d 784 (Colo. Ct. App. 2001). Bolte sought further review, but both the Colorado Supreme Court and the United States Supreme Court declined to review the matter. Bolte also unsuccessfully sought relief from the judgment in federal district court.

¶ 15. Meanwhile, Koscove proceeded to file a grievance against Bolte in Wisconsin.

¶ 16. On May 1, 2003, the Office of Lawyer Regulation (OLR) filed a complaint against Bolte, alleging he (1) performed legal services for Koscove in the State of Colorado, which constituted the unauthorized practice of law in violation of SCR 20:5.5(a) (Count I); (2) transferred real estate with the intent to hinder, delay or defraud Koscove's rights as a judgment creditor in violation of SCR 20:8.4(c) (Count II); and (3) made misrepresentations to a federal district court in Colorado in relation to his application for admission pro hac vice in violation of SCR 20:8.4(c) (Count III). The OLR sought a nine-month suspension of Attorney Bolte's license to practice law.

¶ 17. The parties stipulated to certain facts and a hearing was conducted on November 12, 2003. Post-hearing briefing was ordered, and the referee issued his report and recommendation on or about May 26, 2004.

¶ 18. The referee concluded that many, if not most, of the activities Bolte performed on Koscove's behalf were permissible investigative services, or were protected by virtue of his legitimate pro hac vice admission.[4] However, the referee concluded that some of the activities Bolte performed did constitute the unauthorized practice of law. He concluded further that Bolte's conveyance of real property in the wake of the civil judgment was for the purpose of minimizing the judgment obtained by Koscove and in violation of SCR 20:8.4(c). However, he noted that Koscove was not damaged by the transfer because the property in question was fully mortgaged at the time. The referee recommended a three-month suspension of Bolte's license to practice law in Wisconsin. This appeal followed.

¶ 19. Bolte contends that the referee erred in concluding that he engaged in the unauthorized practice of law, and also erred in concluding that he violated SCR 20:8.4(c) by transferring the real estate to Bredescel. He states his issues for review as follows:

> I. When a Wisconsin attorney provides investigative services in another state pursuant to a written agreement, is that attorney engaged in the unauthorized practice of law if the attorney is subsequently admitted to practice pro hac vice by the federal court of that state?

---

[4] As noted, the referee concluded that the OLR had failed to prove that Bolte engaged in conduct involving fraud, deceit or misrepresentation in relation to his pro hac vice application.

II. May a Wisconsin attorney be disciplined for transferring property with intent to defraud a judgment creditor when the property at issue was fully mortgaged and had no equity value?

■

¶ 20. It is well settled that we will affirm the referee's findings of fact unless they are clearly erroneous. We review conclusions of law de novo. *In re Disciplinary Proceedings Against Eisenberg,* 2004 WI 14, ¶ 5, 269 Wis. 2d 43, 675 N.W.2d 747.

¶ 21. The first issue we consider is whether certain activities Bolte engaged in prior to the time Koscove retained Attorney Mueller constituted the unauthorized practice of law.[5] In Wisconsin, SCR 20:5.5(a) provides that "[a] lawyer shall not practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction." Therefore, the question whether Bolte engaged in the unauthorized practice of law must be analyzed under Colorado law.

¶ 22. Colorado's disciplinary rule 5.5(a) provides that "a lawyer shall not practice law in a jurisdiction where doing so violates the regulations of the legal profession in that jurisdiction." The Colorado rule is thus virtually identical to Wisconsin's rule. In addition, the Colorado Supreme Court has promulgated rules of practice governing the unauthorized practice of law, which are investigated and prosecuted by a court appointed committee. See C.R.C.P. 228 to 240.1.

¶ 23. A Colorado court ruled that Bolte violated a Colorado civil statute prohibiting the unlicensed prac-

---

[5] The referee concluded that Bolte's activities following the retention of Attorney Mueller were protected by *Spanos v. Skouras Theatres Corp.,* 364 F.2d 161, 169 (2d Cir. 1965), *aff'g* 235 F. Supp. 1 (S.D.N.Y. 1964), *cert. denied,* 385 U.S. 985 (1966). OLR does not challenge this conclusion.

tice of law. However, Bolte argued and the referee agreed that the resulting judgment is of limited usefulness in this disciplinary proceeding because the burden of proof used in the Colorado civil case was lower than the "clear and convincing" evidence standard applicable to disciplinary matters in Wisconsin. Therefore, the OLR was required to independently prove that Bolte engaged in the unauthorized practice of law, by clear and convincing evidence.

¶ 24.   A leading case in Colorado on the unauthorized practice of law is *Denver Bar Association v. Public Utilities Commission,* 391 P.2d 467 (Colo. 1964). There, the Colorado Supreme Court recognized that:

> There is no wholly satisfactory definition as to what constitutes the practice of law; it is not easy to give an all-inclusive definition. We believe that generally *one who acts in a representative capacity in protecting, enforcing, or defending the legal rights and duties of another and in counselling, advising and assisting him in connection with these rights and duties is engaged in the practice of law.* Difficulty arises too in the application of the definition.

*Id.* at 471 (emphasis added); *see also* C.R.C.P. 201.3.[6]

---

[6] Rule 201.3 pertains to bar admission and classification of applicants and its definitions are limited to the rule. Still we deem it instructive that this rule defines the "practice of law" as follows:

(2) For purposes of this rule, practice of law means:

(a) The private practice of law as a sole practitioner or as a lawyer employee of or partner or shareholder in a law firm, professional corporation, legal clinic, legal services office, or similar entity; or

(b) Employment as a lawyer for a corporation, partnership, trust, individual, or other entity with the primary duties of:

¶ 25. The referee opined that: "many of the instances of the alleged unauthorized practice of law cited by OLR are actually a combination of permissible investigative activities by Bolte and the impermissible practice of law by Bolte." The referee specifically identified the following as examples of activities that he deemed to constitute the unauthorized practice of law:

On March 30, 1995, Bolte prepared what he called

(i) Furnishing legal counsel, drafting documents and pleadings, and interpreting and giving advice with respect to the law, and/or

(ii) Preparing, trying or presenting cases before courts, executive departments, administrative bureaus or agencies; or

(c) Employment as a lawyer in the law offices of the executive, legislative, or judicial departments of the United States, including the independent agencies thereof, or of any state, political subdivision of a state, territory, special district, or municipality of the United States, with the primary duties of

(i) Furnishing legal counsel, drafting documents and pleadings, and interpreting and giving advice with respect to the law, and/or

(ii) Preparing, trying or presenting cases before courts, executive departments, administrative bureaus or agencies; or

(d) Employment as a judge, magistrate, hearing examiner, administrative law judge, law clerk, or similar official of the United States, including the independent agencies thereof, or of any state, territory or municipality of the United States with the duties of hearing and deciding cases and controversies in judicial or administrative proceedings, provided such employment is available only to a lawyer; or

(e) Employment as a teacher of law at a law school approved by the American Bar Association throughout the applicant's employment; or

(f) Any combination of subparagraphs (a)-(e) above.

a "Brief," a document that appears to be a combination of permissible document review and impermissible legal analysis and advice.

On November 30, 1994, Bolte prepared a memorandum. Again, most of the memorandum records the results of Bolte's investigation. However, Bolte then documents his legal analysis by applying the facts he learned to the law.

Sometime late in March 1995, Bolte and Koscove met with several witnesses. Bolte prepared a summary and notes of their meeting. The majority of the memorandum and notes simply record permissible investigative services rendered by Bolte. However, Bolte then indicates statutes of limitation issues were discussed. Laws passed by Congress were also discussed.

Bolte assisted Koscove in negotiating the terms and conditions of the retainer agreement with Mueller.

Bolte expressed his opinion to Koscove that she could pursue penalty interest or treble damages under Federal antitrust laws.

Bolte sent a letter to ARCO containing a list of questions, along with a copy of a power of attorney that Bolte prepared for Koscove.

¶ 26. A related question is whether Bolte's actions are nonetheless protected by the pro hac vice rule articulated in *Spanos v. Skouras Theatres Corp.*, 364 F.2d 161, 169 (2d Cir. 1965) *aff'g* 235 F. Supp 1 (S.D.N.Y. 1964), *cert. denied,* 385 U.S. 987 (1966). Bolte contends that the holding in *Spanos* provides that his pro hac vice admission to the federal court encompasses any legal services "reasonably incident" to his activities before the federal court in this matter. In other words, he contends that it insulates an attorney from claims of

unauthorized practice of law within the state in which the district court is located. *Spanos v. Skouras Theatres Corp.*, 235 F. Supp 1, 13 (S.D.N.Y. 1964).

¶ 27.  At the oral argument before this court there was discussion about the precise period of time the court should scrutinize in considering whether Bolte engaged in the unauthorized practice of law, and the extent to which Bolte's pro hac vice admission to the federal court immunized his earlier activities related to the Koscove/ARCO matter.

¶ 28.  Bolte executed the agreement with Koscove on or about November 22, 1994. Attorney Mueller was interviewed on or about January 30, 1995. He was not formally retained until on or about April 7, 1995, although it is undisputed that he performed legal services for Koscove while the retainer was being negotiated. ARCO filed suit against Koscove in July 1995. Bolte's application for pro hac vice admission was filed in November 1995 and Bolte was granted pro hac vice status by order dated January 5, 1996.

■

¶ 29.  We have carefully considered Bolte's arguments, and the circumstances in which Bolte acted, and we must conclude that the record does contain clear and convincing evidence that Bolte engaged in the unauthorized practice of law with respect to certain of his activities.

¶ 30.  For example, Bolte analyzed Koscove's lease with ARCO and expressed his opinion as to how it should be interpreted. Perhaps if Bolte were a geologist or mining engineer with relevant technical expertise, this action would not constitute the unauthorized practice of law. However, the record does not indicate that Bolte had such technical expertise. The value of his

review lay in his legal analysis of the document. Similarly, Bolte expressed opinions about various legal theories for recovery of damages and discouraged Koscove from pursuing at least one theory. We conclude that these were direct legal services that constituted the unlicensed practice of law.

¶ 31. Similarly, in January 1995, Bolte sent a letter to ARCO containing a series of questions about the lease payments, together with a power of attorney authorizing him to communicate with ARCO on Koscove's behalf.

¶ 32. In the course of his investigation into the royalty payments due under the mineral leases in question Attorney Bolte evidently discovered and documented significant anomalies that were adverse to his client's financial interests. In addition to merely recounting facts he learned, he began to consider possible legal remedies that might be available to the client, and made recommendations concerning these legal theories and remedies.

¶ 33. We are not persuaded that *Spanos* immunizes all of Bolte's activities related to the ARCO/Koscove matter. As the referee observed:

> The State of Colorado obviously has an interest in protecting its citizens from the unauthorized practice of law. That interest cannot be defeated by a claim that a case "might" ultimately be filed in Federal Court or that local counsel "might" ultimately be retained.

We conclude, under the facts of this case, that Bolte's initial activities conducted on Koscove's behalf, investigating and evaluating the ARCO lease were not, as a matter of law, sufficiently linked to the federal court

proceedings to be deemed "reasonably incident" to his subsequent activities before the federal court for purposes of *Spanos*.

¶ 34. The second issue on appeal involves whether the OLR demonstrated with clear and convincing evidence that Bolte's quit claim deed transfer of his Colorado real property violated SCR 20:8.4(c).

¶ 35. SCR 20:8.4(c) provides that it is "professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation." Bolte contends that he did not violate this rule because the property in question had no equity at the time of the conveyance. He asserts that under Colorado law, "[t]he fundamental element of a fraudulent conveyance is whether the debtor's estate is unjustly diminished and he cites *Megabank Financial Corp. v. Alpha Gamma Rho Fraternity*, 841 P.2d 318, 320 (Colo. Ct. App. 1992) in support of his argument. He maintains that the transfer was "the knee jerk reaction of a man who believed that the State of Colorado had wronged him, who wanted to leave the state and everything associated with it."

¶ 36. However, the OLR notes that under SCR 20:8.4 it "is unnecessary to either plead or prove the tort of misrepresentation in order to establish by clear and convincing evidence that an attorney has violated a rule of professional conduct, proscribing attorney conduct involving dishonesty, fraud, deceit or misrepresentation." *See In re Disciplinary Proceedings Against Marks*, 2003 WI 114, ¶ 50, 265 Wis. 2d 1, 665 N.W.2d 836 (citation omitted). The OLR points to (1) the timing of the transfer, a mere one week after judgment was entered against Bolte; (2) contemporaneous efforts to shield himself from the judgment including an effort to enjoin the court from entering final judgment; (3) the

unilateral nature of the transfer, without the grantee's knowledge or consent; and (4) what the OLR deemed the "unlikely explanation" provided by Bolte.

¶ 37.   While this evidence is largely circumstantial it is not insufficient. *See, e.g., Peters v. State,* 70 Wis. 2d 22, 33–34, 233 N.W.2d 420 (1975). We deem the referee's credibility determinations highly relevant here. The referee stated: "[w]hile Bolte may have had little or no equity in the property, that fact does not justify the fraudulent nature of the conveyance by Bolte, which was to defeat and minimize the judgment taken by Koscove." We agree that the OLR has demonstrated that Bolte's decision to transfer the Colorado property was made with intent to interfere with Koscove's ability to levy on the property in violation of SCR 20:8.4(c).

¶ 38.   We turn to the question of the appropriate discipline for Attorney Bolte's violations of SCR 20:5.5(a) and SCR 20:8.4(c). The OLR maintained that a nine-month suspension of Bolte's license to practice law was appropriate. The referee recommended a suspension of three months.

¶ 39.   While this is a case implicating the parameters of the unauthorized practice of law, it is an unusual one. We have no doubt that there are peculiar circumstances giving rise to this proceeding, which are not reflected in the record before us. What we have here is an undoubtedly skilled lawyer who was not lawfully entitled to render legal advice in Colorado because he was not licensed to practice law there. At no time did he misrepresent this status to his client. Indeed, he apparently took pains to try to define a permissible scope of activities and, when it became apparent that litigation was likely, promptly advised the client to retain a licensed attorney and assisted the client in finding

appropriate counsel. He then collaborated with the licensed attorney to obtain pro hac vice admission to federal court in Colorado so he could lawfully assist with the litigation, which clearly inured to Koscove's financial benefit.

¶ 40.  Ultimately, the assessment of Bolte's motives required a credibility determination, which is vested in the referee. Here, the referee observed:  "Bolte was honest, sincere and hard working in all the services he rendered to Koscove under the Agreement. It was his efforts that played a major role in Koscove's successful result." He adds: "I find it difficult to believe that this conduct by Bolte would be repeated or that he poses a threat to the public. His conduct was isolated to this unique case. Appropriate discipline in this case should take these factors into account."

¶ 41.  Mindful that protection of the public is the overriding concern in these matters, in this case, Koscove was never under any misunderstanding about Attorney Bolte's status as an unlicensed lawyer. Indeed, she was sufficiently aware of this fact that she used the threat—successfully—to divest him of earnings she had contractually agreed to pay for his services, after he assisted her in obtaining a multi-million dollar recovery.

■

¶ 42.  Attorney Bolte does not reside in Wisconsin, has no prior disciplinary history, and has been on inactive status since 1989. He has been in good standing for some 44 years. There is no evidence the client suffered any harm as a result of Attorney Bolte's actions. Therefore, we conclude that a public reprimand is sufficient discipline for Bolte's misconduct in this matter. We accept the referee's recommendation that Bolte be directed to pay the costs of this disciplinary proceeding which presently total $23,345.64.

¶ 43.  IT IS ORDERED that Richard Bolte is publicly reprimanded for professional misconduct.

¶ 44.  IT IS FURTHER ORDERED that within 60 days of the date of this order Richard Bolte pay to the Office of Lawyer Regulation all the costs of this proceeding provided that if such costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Richard Bolte to practice law in Wisconsin shall be suspended until further order of this court.